IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

NANCY LEE HAYNES BUSH,       )
                                    )
     Plaintiff,                )
                                      )
v.                           )    Civil Action No. 7:18-cv-00042
                                    )
DAVID DENTON LAWRENCE, TRUSTEE  )    By: Elizabeth K. Dillon
OF THE LINWOOD EARL BUSH TRUST,  )        United States District Judge
*et al.*,                      )
                                    )
     Defendants.             )

MEMORANDUM OPINION

Plaintiff Nancy Bush is the wife of Linwood Earl Bush, who died on the day this lawsuit

was filed. Nancy, whose complaint describes her sixty-seven-year marriage as "rocky," alleges

that her now-deceased and often estranged-while-alive husband, Linwood, "literally 'gave away

the farm.'" (Am. Compl. ¶¶ 2, 8, Dkt. No. 6.) According to her, a 154-acre property in

Botetourt County, Virginia, where Linwood resided (the Farm) was purchased with her assets

and marital assets, but Linwood fraudulently transferred it to an *inter vivos* trust with the express

intent of excluding her from the assets. (*Id.* ¶ 53.)

Nancy has brought claims against David Lawrence, who is the Trustee of her late

husband's trust, titled the "Linwood Earl Bush Trust" (the Trust). She has also named as

defendants David L. Bush, Wesley W. Bush, and Francis Ann Hunt (collectively, with

Lawrence, the Trust Defendants), who are the nephews and niece of Linwood and the current

beneficiaries of the Trust. Nancy has also sued Toby Lacks, who is a former beneficiary of the

Trust and had worked as a farmhand at the Farm for twenty-five years. The final defendant is

the curator of the Estate of Linwood Earl Bush Trust, Michael S. Whitlow.

Pending before the court are three motions. There are two motions to dismiss for lack of jurisdiction: the first brought by the Trust Defendants, (Dkt. No. 14); the second by the Curator, Whitlow (Dkt. No. 19). Both motions rely on the probate exception to argue that this court does not have subject-matter jurisdiction over Nancy's claims. Also pending before the court is Nancy's motion to disqualify one of the attorneys for the Trustee defendants, Lenden Eakin, who is likely to be a witness in the case.[1] (Dkt. No. 12.) All of these motions were fully briefed and argued before the court.

Because the court concludes that it has jurisdiction over this case, it will deny both motions to dismiss. It also will grant in part and deny in part the motion to disqualify.

## I. BACKGROUND

### A. Factual Background

Most of the allegations in the complaint are not pertinent to the pending motions. Thus, the court's overview focuses only on the most important events and those relevant to the motions. The Bushes purchased the Farm in 1998, but it was titled only in Linwood's name. (Am. Compl. ¶¶ 28–29.) On August 15, 2016, Linwood executed a Trust and a Deed of Gift, both prepared by Eakin, transferring the Farm into the Trust. The Trust named Lawrence as Trustee. At that time, Lacks was named the sole beneficiary of the Trust. (Am. Compl. ¶¶ 45, 47–48.)

In the month preceding the transfer, Nancy had filed for divorce in Florida, where she was living at the time. (Am. Compl. ¶ 26.) In February 2017, the Trust was amended to remove Lacks as a beneficiary and replace him with Linwood's two nephews and niece as primary

---

[1] After the motion to disqualify was filed, Eakin has not formally withdrawn but has ceased including his name on documents filed with the court. His law partner and firm continue as counsel of record, and he continues to be involved in the representation.

beneficiaries.[2] (Am. Compl. ¶ 49.) Nancy alleges that the transfer "was intended to delay,

hinder, or defraud [her] from what she was lawfully entitled pursuant to equitable distribution in

the Divorce Action, or otherwise at law." (Am. Compl. ¶ 51.)

On January 29, 2018, Linwood died at 4:00 a.m., and then, Nancy—who was living in

Florida at the time and unaware of his death—filed the complaint in this action at 2:57 p.m.

(Am. Compl. ¶ 5; Pl.'s Mem. Opp'n Mot. Dismiss 3 n.1, Dkt. No. 23.) On February 15, 2018,

the Probate court entered an Order appointing a curator of the estate, which order included a

directive to manage the Farm. On March 7, 2018, an Amended Complaint was filed that

substituted a representative for Linwood because of his death. On July 8, 2018, Nancy filed for

an elective share of the Augmented Estate.[3]

## B.  Counts in Complaint and Relief Requested

The latest version of the complaint is the Amended Complaint, filed March 7, 2018 (Dkt.

No. 6), which Nancy describes as a request to declare the Trust an *inter vivos* trust, void for lack

of capacity or undue influence, and to place a constructive trust over all assets of the Trust. (Am.

Compl. ¶ 1.) She invokes this court's diversity jurisdiction, 28 U.S.C. § 1332. (*Id.* at ¶ 11.)

The amended complaint contains four counts. Count I is a claim for fraudulent

conveyance under Virginia Code § 55-80 *et seq.*, which is based on the conveyance of the Farm

to Toby Lacks, allegedly for no consideration and solely to diminish Linwood's estate to

Nancy's detriment. (Am. Compl. ¶¶ 60–67.) In this count, Nancy asks for an order: "(i)

preliminarily and permanently enjoining the Trustee from using or distributing any Trust assets;

---

[2]  When Lacks was the primary beneficiary, the nephew and niece were contingent beneficiaries. (Am. Compl. ¶ 49.)

[3]  This fact is the subject of supplemental briefing, which the court allowed. (*See* Dkt. Nos. 30, 32.) Neither the documents submitted by the defendants nor the supplemental memorandum submitted by Nancy change the court's analysis. Thus, the court does not address them further.

(ii) setting aside the Trust and the Deed pursuant to Virginia Code § 55-82.2, or, alternatively, placing a constructive trust over all assets held in the Trust, including the Botetourt Farm, for the benefit of Nancy Bush; (iii) granting Nancy Bush an award of sanctions against the Curator, including attorneys' fees, pursuant to Virginia Code § 55-82.1; and (iv) granting such other and further relief as the Court deems just and proper." (Am. Compl. at p. 10.)

Count II is a count for voluntary transfer under Virginia Code § 55-81 *et seq.*, which is based on Nancy's status as a "creditor." This count requests same relief as Count I. (Am. Compl. ¶¶ 68–71.)

In Count III, Nancy seeks declaratory judgment, pursuant to 28 U.S.C. § 2201, Virginia Code §§ 8.01-184 to -191, and Virginia Code § 64.2-724, that Linwood Bush lacked capacity to create the Trust and Deed. It requests the same relief as (i) and (iv) from Counts I and II and also contains a request for an order "declaring the Trust and Deed null and void for Linwood Bush's lack of capacity pursuant to Virginia Code § 64.2-724, or, alternatively, placing the Farm in a constructive trust. (Am. Compl. ¶¶ 83–95.)

Lastly, Count IV also seeks a declaratory judgment (pursuant to the same statutory provisions as Count III) that the Trust and Deed are the Result of Undue Influence. (Am. Compl. ¶¶ 83–95.)

## II. DISCUSSION

### A. Motions to Dismiss for Lack of Jurisdiction

#### 1. Standard of review

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Subject matter jurisdiction is a threshold issue. Without a proper basis for subject matter jurisdiction, a case must be dismissed. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

96 (1998); *Haley v. Va. Dep't of Health*, No. 4:12-CV-00016, 2012 WL 5494306, at \*2 (W.D. Va. Nov. 13, 2012) ("Federal district courts are courts of limited jurisdiction."). The plaintiff, who asserts jurisdiction, bears the burden of proving subject matter jurisdiction in response to a Rule 12(b)(1) motion. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). In deciding whether jurisdiction exists the court may "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting Richmond, Fredericksburg & Potomac R. Co. v. U.S., 945 F.2d 765, 768 (4th Cir. 1991)) (internal quotation marks omitted).

  **2. The probate exception does not apply because this court obtained jurisdiction before the probate court.**

  In their respective motions, defendants argue that the probate exception bars Nancy's claim here. The probate exception is a limited exception to the rule that, where a federal district court has jurisdiction over an action, it must exercise it. In *Marshall v. Marshall*, 547 U.S. 293 (2006), the Supreme Court cautioned courts against expanding the probate exception. It noted that the probate exception applies only to two types of claims: (1) those seeking to probate or annul a will, or administer a decedent's estate; and (2) those seeking "to dispose of property that is in the custody of the state probate courts." *Id.* at 311–12. The second of these is really "a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res,* a second court will not assume *in rem* jurisdiction over the same *res.*" *Id.* at 311. As other courts have explained, this is not really a principle specific to probate but an application of the "prior exclusive jurisdiction doctrine." *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1253 (9th Cir. 2017).

  The first exception set forth in *Marshall* is clearly inapplicable here because Nancy is not asking this court to probate or annul a will or to administer Linwood's estate. Defendants

contend, though, that the second type of claim is at issue here. Specifically, they argue both that

the probate court has already exercised jurisdiction over the Farm,[4] which is the *res* in this case,

and that Nancy's request that this court impose a constructive trust (among other claims) would

require the court to assume jurisdiction over the same *res,* which it should not do under the

probate exception.

In order for the probate exception to apply and preclude this court's jurisdiction, the court

would have to find *both* that the probate court obtained jurisdiction before this court did, and that

the property in the probate court's jurisdiction is the same *res* that Nancy asks this court to

dispose of.

The first of these two requirements is set forth in *Chevalier v. Estate of Barnhart*, 803

F.3d 789 (6th Cir. 2015), as well as several district court cases upon which Nancy relies.

*Chevalier* squarely holds that "[t]he probate exception does not divest a federal court of subject-

matter jurisdiction unless a probate court is already exercising *in rem* jurisdiction over the

property at the time the plaintiff files her complaint in federal court." *Id.* at 804; *see also, e.g.,*

*Abromats v. Abromats*, No. 16-CV-60653, 2016 WL 10891528, at *4 (S.D. Fla. July 14, 2016)

(same). Because she filed her original complaint in this matter before the probate court ever took

any custody of the Farm, Nancy contends that the above rules mean that the probate exception

does not apply. The court agrees with the reasoning of *Chevalier* and has found no authority to

the contrary.

Defendants offer no authority disputing the general principle set forth in *Chevalier*, and

the Trust Defendants conceded at the hearing that if the original complaint conferred jurisdiction

on this court, then the probate exception does not apply. But defendants argue that the operative

---

[4] According to defendants, the Botetourt County Circuit Court exercised jurisdiction when it appointed
Whitlow as curator on February 15, 2018. (Mem. Supp. Trust Defs.' Mot. Dismiss 5, Dkt. No. 15.)

complaint, for purposes of determining whether this court had jurisdiction before the probate

court is Nancy's amended complaint, which was filed *after* February 15, 2018. They reason that

because Linwood was deceased at the time the complaint was filed, his personal representative

was an indispensable party under Federal Rule of Civil Procedure 19. They then contend that,

because that indispensable party was not named, jurisdiction did not attach at the time the

original complaint was filed. Instead, and because the original complaint never conferred

jurisdiction on this court, the only time the court could have obtained jurisdiction was through

the amended complaint, which occurred *after* the probate case had been filed.

Defendants' argument, while creative, fails for want of authority. In particular, the court

finds unconvincing their contention that jurisdiction did not attach at the filing of the original

complaint because an indispensable party was not named. The only case they cite for the

proposition that there was no jurisdiction upon filing of the initial complaint is *Booth v. Dotson*,

93 Va. 233, 235 (1896). The Curator Reply brief cites *Booth* for the proposition that a suit

against a person who dies before suit papers have been served is a legal nullity and must be

amended or dismissed. (Curator Reply Br. 2–3.) That may be an accurate statement of the law,

but this case—unlike *Booth*—did not involve only a single (deceased) defendant. There were a

number of other defendants named in the original complaint, including the Trustee. The

complaint was not "a legal nullity" as against them.

Furthermore, and significantly, defendants point to nothing to indicate that the failure to

include an indispensable party is a *jurisdictional* defect. As one court explained,

> Failure to join an indispensable party does not oust the jurisdiction of the
> court in the action before it. But such failure does destroy the power of the
> court to grant any relief which would in any way affect an absent
> indispensable party. The distinction has been well explained in *State of
> Washington v. U.S.*, 9 Cir., 1936, 87 F.2d 421, 427:

> In cases where there is error in nonjoinder of parties, either necessary or indispensable, the courts have fallen into common error by designating the error as 'jurisdictional.' The defect is not, properly speaking, a jurisdictional one . . . .

*Boris v. Moore*, 152 F. Supp. 602, 608–09 (E.D. Wis. 1957), *aff'd sub nom. Boris v. Hamilton Mfg. Co.*, 253 F.2d 526 (7th Cir. 1958) (citations omitted); *see also Eprad Inc. v. Dolby Labs., Inc.*, No. C 79-520, 1980 WL 30253, at *1 (N.D. Ohio Sept. 10, 1980) ("The fact that what may be an indispensable party is not now before the Court does not affect the Court's jurisdiction over the case.") (citing *Tryforos v. Icarian Development Co., S.A.*, 518 F.2d 1258 (7th Cir. 1975), *cert. denied*, 423 U.S. 1091 (1976)); 3A Wright, Miller, & Kane, *Federal Practice and Procedure* § 1611, at 166–71 (3d ed. 2001) ("Since the indispensable-party doctrine is equitable both in its origin and nature . . . scholarly commentary as well as the vast majority of courts reject this 'jurisdictional' characterization.").

Also, Rule 19 does not always require dismissal due to a failure to join indispensable parties, but it allows for the consideration of equitable factors when joinder is not feasible. Fed. R. Civ. P. 19(b). This, too, supports the conclusion that a failure to join an indispensable party is not a jurisdictional defect. Thus, the court finds no basis for the claim that this court's jurisdiction did not attach at the time the initial complaint was filed. In sum, the operative complaint for purposes of the timing issues is the first one, filed on January 29, 2018. Using that date, it is clear that the complaint was filed before probate court obtained jurisdiction over any *res,* which occurred in February 2018. Thus, under *Chevalier* and other cases citing it, the probate exception (or the primary jurisdiction doctrine) does not apply to preclude this court's jurisdiction.

In light of that ruling, the court does not address Nancy's argument that the relief sought here relates solely to an *inter vivos* trust, and so the probate exception does not apply in any

event,[5] nor does it address Nancy's argument that this case does not involve court's exercise of jurisdiction over the same *res* as the probate court.

### 3. No party has established any grounds for this court to abstain from exercising its jurisdiction.

This court "has a duty to adjudicate a controversy properly before it," and abstention is the exception, not the rule." *New Beckley Mining Corp. v. Int'l Union*, 946 F.2d 1072, 1073 (4th Cir. 1991) (internal quotation marks and citation omitted). Nonetheless, the court also considered whether there may be other grounds for declining to exercise jurisdiction in this case, and it directed the parties to provide supplemental briefing on whether, even if this court has jurisdiction, "it should abstain from exercising that jurisdiction under the principles set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976), or on some other ground for abstention." (Order, Dkt. No. 36.) The parties submitted additional briefs in response, which the court has also considered.

After review of those briefs, the court concludes that *Colorado River* abstention is not appropriate here. First of all, that type of abstention is to be employed only under "exceptional circumstances" and only where there are parallel federal and state suits. Indeed, the existence of parallel suits is a threshold issue. *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). If they exist, "then a district court must carefully balance several factors, 'with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Id.* After balancing those

---

[5] *See, e.g.*, *Custis v. Brunsting*, 704 F.3d 406, 409–10 (5th Cir. 2013) (explaining that assets in an *inter vivos* trust generally avoid probate and are not part of the decedent's estate; thus, challenges to such a trust fall outside the probate exception); *Oliver v. Hines*, 943 F. Supp. 2d 634, 638 (E.D. Va. 2013) (ruling that the probate exception did not apply to an *inter vivos* trust even if it seems to function as a will); *Potts v. Potts*, No. CIV. WDQ-13-1986, 2014 WL 4060031, at *5 (D. Md. Aug. 13, 2014) (declining to apply the probate exception to an *inter vivos* trust).

factors,[6] "abstention should be the exception, not the rule," and it may be considered only when

"the parallel state-court litigation will be an adequate vehicle for the complete and prompt

resolution of the issues between the parties." *Id.* at 464 (quoting *Moses H. Cone,* 460 U.S. at 28).

To constitute "parallel" suits, however, the two must involve "almost identical" parties

litigating "substantially the same issues in different forums." *Id.* (citation omitted).

Additionally, suits are "not parallel [if] the remedy sought and the issues raised [are] not the

same." *McLaughlin v. United Va. Bank*, 955 F.2d 930, 935 (4th Cir. 1992). A comparison of the

two suits and the parties here convince the court that the suits are not parallel. The parties are

not substantially the same, nor are the issues. Although there is some overlap, this suit raises

additional or different claims than have been raised in the probate court. Critically, moreover,

the remedies sought are not the same, either. (*See* Pl.'s Supp. Br. 4–7, Dkt. No. 37 (explaining

differences).) Thus, the court will not abstain pursuant to *Colorado River* abstention.

\*    \*    \*

For the foregoing reasons, the court concludes that it has jurisdiction over this matter and

that it should not abstain from exercising it in this case. Accordingly, defendants' motions to

dismiss will be denied.

## B. Motion to Disqualify Lenden A. Eakin, counsel of record for the Trust Defendants

Nancy also has moved to disqualify Lenden A. Eakin, one of the attorneys for the Trust

Defendants. She wants the court to require him to withdraw entirely from this case, because of

the strong likelihood that Eakin will appear as a witness. As noted above, Eakin drafted and

---

[6] The factors are "(1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights." *Chase Brexton Health Servs.*, 411 F.3d at 463–64.

witnessed the Trust and Deed that Nancy seeks to void. According to Nancy, Eakin also has told

her counsel that he "evaluated" Linwood's capacity at the time of the documents' execution.

(Pl.'s Mot. Disqualify 2–3, Dkt. No. 13.) Indeed, the Trust Defendants concede that he likely

will be a fact witness. (Mem. Opp'n Mot. to Disqualify 1, Dkt. No. 18.) They argue, however,

that Eakin need not be entirely disqualified but should simply be required not to participate "in

the conduct of the trial or other proceeding in which he may testify." (*Id.*) Nancy disagrees and

contends that Eakin should be disqualified altogether from serving any role in this case.

Nancy seeks disqualification under the witness-advocate rule, embodied in Virginia Rule

of Professional Conduct 3.7. In relevant part, Rule 3.7 directs that "[a] lawyer shall not act as an

advocate in an adversarial proceeding in which the lawyer is likely to be a necessary witness

except [under certain circumstances not applicable here.]" VRPC 3.7(a). The general purpose of

the rule is "prophylactic"; it is "'designed to protect the interests of the client, the adverse party,

and the institutional integrity of the legal system as a whole.' These interests become imperiled

when an advocate testifies because a lawyer's role of arguing causes and a witness's role of

reciting facts are fundamentally inconsistent." *Premium Prods., Inc. v. Pro Performance Sports,

LLC*, 997 F. Supp. 2d 433, 436 (E.D. Va. 2014) (quoting *Estate of Andrews v. United States*, 804

F. Supp. 820, 824 (E.D. Va. 1992)).

In applying that rule here, the court first notes that Eakin's law partner and law firm are

not, at least at this time, disqualified from representing the Trust Defendants. In a separate

subsection, Rule 3.7 allows a lawyer to "act as advocate in an adversarial proceeding in which

another lawyer in the lawyer's firm is likely to be called as witness unless precluded from doing

so by Rule 1.7 or 1.9." VRPC 3.7(c). Thus, pursuant to that subsection, and there being no

assertion or evidence of a conflict of interest under either Rule 1.7 or 1.9,[7] Mr. Ferris and the law

firm may continue to represent the Trust Defendants. *See United States v. Perry*, 30 F. Supp. 3d

514, 537 (E.D. Va. 2014).

The closer question presented is whether, as Nancy contends, he must withdraw

altogether and no longer represent his clients, or whether, as defendants argue, Eakin may

continue to represent the Trust Defendants in the case and participate in pretrial matters, so long

as he does not act as an advocate at any *proceeding* where he may be a witness. The court first

notes that it is clear that he may not serve as an advocate at trial, or at any evidentiary hearing,

and he may not take or defend depositions, since deposition testimony might be used at trial and

"would reveal the attorney's dual role." *World Youth Day, Inc. v. Famous Artists Merch. Exch.,*

*Inc.*, 866 F. Supp. 1297, 1303 (D. Colo. 1994).

The court concludes, though, that the weight of authority supports permitting Eakin to

continue to be involved in the case, although there are cases seemingly reaching different

conclusions. For example, Nancy is correct that some courts use the language "disqualified,"

and some even talk about "removing" the lawyer as the client's attorney. *E.g.*, *Premium Prods.,*

*Inc.*, 997 F. Supp. 2d at 438; *Estate of Andrews*, 804 F. Supp. at 821.

But there are also courts that have adopted the hybrid approach urged by defendants, or at

least suggested it was proper. *E.g.*, *Ford Motor Co. v. Nat'l Indemnify Co.*, No. 3:12-cv-839,

2013 WL 4498698, at *7 (E.D. Va. Aug. 21, 2013) (noting that lead trial counsel would be

disqualified from acting as a trial advocate, but was not precluded from "assisting in the

preparation of the case or even from assisting at trial in a non-advocacy role"). Another judge of

---

[7] There is no allegation of a conflict of interest between Eakin and his clients, and no allegation that his testimony would be detrimental to them; instead, he is expected to testify that Bush was competent at the time he executed documents.

the same court suggested the same but did not have to decide the issue. *United States v. Perry*, 30 F. Supp. 3d 514, 538 (E.D. Va. 2014) (citing *Ford Motor Co.*, *supra*).

The court also notes that cases outside of Virginia routinely have allowed counsel to assist with pretrial preparations, although the applicable rule in those cases often adopts Model Rule of Professional Responsibility 3.7 exactly, which precludes an attorney from being an advocate "at trial," while the Virginia rule uses "adversarial proceeding." For example, in *American Plastic Equipment, Inc. v. Toytrackerz, LLC*, No. 07-cv-2253, 2009 WL 902424 (D. Kan. Mar. 31, 2009), the court was evaluating the Kansas counterpart, which prohibits advocacy "at trial," and it concluded that counsel could still assist in pre-trial preparation. 2009 WL 902424, at *7; *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 239 F. Supp. 2d 1170, 1174 (D. Colo. 2003) (same). In addressing this very issue, the Colorado Supreme Court looked for guidance to a number of federal decisions and to an informal ABA opinion addressing the issue. *Fognani v. Young*, 115 P.3d 1268, 1276 (Colo. 2005) (en banc) (discussing *ABA Informal Op.* 89-1529 and other authority). The en banc court summarized: "Courts generally permit an attorney disqualified [under the witness-advocate rule] to participate fully in pretrial litigation activities such as strategy sessions, pretrial hearings, mediation conferences, motions practice and written discovery." *Id.* at 1276.

The court recognizes both the difference in wording and the commentary to Virginia's Rule 3.7 explaining that the Virginia prohibition is broader than the Model Rule. But the court does not believe that the term "adversarial proceeding" can be read to prevent an attorney from assisting with a case altogether or advising other counsel on the case. Despite the different wording of the Virginia rule, the purposes of the witness-advocate rule are in no way undermined by that type of assistance or advice. So long as the fact-finder is not aware of Eakin's dual role,

the court concludes that his continued representation does not run afoul of Rule 3.7. Accordingly, the court will not require him to withdraw and will allow him to continue to be involved in the case, but he will not be permitted to participate as an attorney at trial, at any evidentiary hearing, or at any depositions. Accordingly, the motion to disqualify will be granted in part and denied in part.

## III. CONCLUSION

For the reasons set forth above, the court will deny defendants' motions to dismiss and grant in part and deny in part the motion to disqualify. An appropriate order will be entered.

Entered: March 29, 2019.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge